Case 17-1822, Kelli Nettleman v. Comm of Social Security Argument not to exceed 15 minutes per side Mr. Rodman, when you're ready, you may proceed for the appellant May it please the court. My name is Jason Rodman and I represent the appellant, Kelli Mae Nettleman, a demonstrated hard worker and objectively disabled individual. I'd like to reserve half of my time for rebuttal. First, the ALJ, the administrative law judge, did not properly consider the respiratory listings, and second, the objective medical evidence backs up what claimant testified at hearing. This is a lady who is oxygen deficient. She endures falls. Because of that, she has to wear oxygen. This affects her energy. Even activity with sitting will be too great a strain on her to do without oxygen. She can sometimes endure sitting without activity for up to 10 minutes. This affects her energy. She must nebulize regularly in a way that out of her lungs quickly enough. This affects her energy. I want to first show you how the respiratory listings were met or equaled here, and second, talk about how the objective medical evidence backs up what her testimony was at hearing. First, by the time of the hearing, structural lung problems had set in for Kelli Nettleman. We see in the evidence stuff from April 2015. As you review the timing of the record, it's administrative law judge was looking across the bench to a claimant who had a condition that was at listing level. However, the judge, instead of looking at that claimant and listening to the things, and this leads into my second point, instead of looking at the claimant and listening to the things she was saying and assessing them up and sizing her up for credibility, instead, the ALJ seems to freeze time. Freeze time at April 2014, which is the date... Counsel, in listings, my understanding is listings are about particular items and numbers. The things that you're saying would seem to be more appropriate at step five of a generalized ability to work. Am I wrong about that? That is, the listing seems pretty simple. This 1.15 FEV, and as I understand it, and correct me if I've got this wrong, the ALJ is looking at the things in the record that are correct under the standards and says you're too high, you're above 1.15. There's this December item, which doesn't appear to go through the three efforts. Then there's a reference to an April item that I take it was not in the ALJ's record, that only was put in at the appeals level. Am I roughly right about the standards? You're roughly right. What's interesting, and I don't want to dwell here, but this opinion turned around in 15 days, which is virtually unheard of in the administrative world. Specifically, the administrative law judge world, the social security world. Fifteen days. Within less than two months from the hearing, the representative's office was contacting the appeals council, alerting them, we've got evidence to get into the reference. We've got exhibits to get into the record. It was a really fast turnaround. I think that's interesting here. Is that the April test? The April one? As far as I can tell from the record, that would be everything that was not in there. That would include the April test, yes. I understand it. Tell me if I'm wrong on this. The best things you have going for you is the .92 reading, which is below 1.15, from December 1, which the magistrate judge discounted because it didn't go through the three tests. It's just a one-liner. And then the April 1 reading of 1.12. I'm looking at real data. Are those the two things you're relying on? Those are two data points which are relevant to the listing. The listings aren't the only thing that's relevant, is how tall you are and the 1.15. The way I'm reading the listings, in the spirit of the way the listings are written, is that the listings represent a shortcut to disability, showing that someone with those listings is not functional and able to work. My point is, at the hearing, the judge was looking across the way to someone who, by the SSA's own listings, was in a position where she wasn't functional and able to work, based on even the shortcut basis. At that time, he just happened to have not seen that evidence yet. Although there was evidence, because that December 2014 was in 10-F. December 2014 was in 10-F, and that was in the exhibit. I agree, but... And there was also an arc that the representative at hearing pointed out, that the September number... I have a question for you. I'm sorry. I'm just saying that that is what I call the one-liner. That is, it's a reference that has a single number. It doesn't say whether you did the three tests and so on. I'm not... I've looked at it, though. I'm not sure if... I guess I'm not sure that I want to disagree, but can... I think that's right. Okay. Go ahead. I think that's right, if I understand you. The ALJ inquires to whether there had been three tests or whether that .92 was the highest level that was tested, nor any inquiry. So why not? There was not any discussion of that at hearing. And... Well, then wouldn't part of your concern be that the ALJ should have inquired into and addressed that issue? I think that's right. I think that's right, Your Honor. And also, it becomes a substantial evidence concern in that, again, the time was frozen. And if I could have a minute to finish this thought, my time... The floor is yours. Oh, thank you. It becomes a substantial evidence issue because the key thing that the administrative law judge relies on is that April 2014 opinion by a medical examiner who seems to strictly base his opinion on... Actually, I said examiner. He's not an examiner. He's a consultant. But he seems to strictly base his opinion on pulling things out of context from Kelly Nettleman's April 2014 thing that was before things went downhill further for you. And thank you. I will save my time for rebuttal if that's all right. All right. Good afternoon. May it please the Court. My name is Natasha Olgin. I'm an assistant regional counsel for the Social Security Administration and a special assistant U.S. attorney for the Western District of Michigan. The Court should affirm the ALJ's decision because Nettleman hasn't demonstrated any basis for remand either in the ALJ's assessment of the listings at Step 3 or in the ALJ's assessment of her subjective complaints, which she didn't address just now, but I'm going to address that, too, in anticipation of the arguments she may make about that on rebuttal. The Court should first uphold the ALJ's Step 3 finding because the ALJ supportably found that Nettleman didn't meet or equal any listings, including any of the listings under Chapter 3.00 for respiratory disorders. The primary listing at issue is listing 3.02A for chronic pulmonary insufficiency. To meet this listing, she had to show essentially that her FEV1 values were less than the relevant value specified in the regulations, which here is 1.15. And the ALJ properly concluded, based on the only proper test before him, that she didn't meet this requirement because all those values from the April 2014 test were well above the threshold value of 1.15. Here Nettleman's argument centers on two other tests in the record, but only one of those was before the ALJ, and that is the December 2014 test. But she can't demonstrate that she's entitled to remand based on that particular test because there's no evidence in the record that three maneuvers were performed or that that was the largest of three maneuvers, which she is required to do under… With regard to that in terms of, I guess, just the argumentative rhetoric, at the hearing did the claimant's side say, hey, here's a .92, look at it? No, that didn't happen. It was just in the record but wasn't argued either way? Because obviously if they had said that, presumably the government's lawyer would have said, wait a minute, did this number follow the rules? If I go back and read every bit of the transcript of the hearing, I'm going to find that .92 just doesn't come up? Yes, it's not referenced there. I just wanted to clarify there was no government lawyer at the hearing before the ALJ, but, no, it's not referenced. But the ALJ might have said it. The ALJ might have. The ALJ didn't, but she's not… But it appears that the claimant's side never said, yes, we recognize those earlier tests are too high for benefits, but, look, we've got this .92, which is in your record. Is that fair? Yes, it's fair. And then the April, we're right that the April one was before the appeals council but not before the ALJ. That's correct. And that one did appear to have the necessary three tests. That one did, yes. So, in principle, could she still or could she have filed with a later onset date based on those tests? Do you mean could she have while this application was pending or could she have then gone back to step one and filed a new application? Yes, she could have. Because her insured status didn't lapse until 2017, as I read it. That's correct. It's actually my understanding that she has filed a new application. Ah, okay. That process is still pending. Okay. Now, you're not taking the position that her issue of the listings and the level is relinquished because her counsel didn't raise it. You're not saying that, are you? No, that's not our argument. That's one of the reasons. Because that would be contrary to the Sims v. Apfel, Judge Thomas, Justice Thomas' opinion in the Supreme Court. Well, actually, let me clarify one thing about that. Sims v. Apfel concerned issues raised. Sims v. Apfel held that a claimant is not required to raise issues before the appeals counsel before raising them in federal court. But it also has language about the ALJ having the duty to look at the arguments for both sides as might be found in the record. Certainly, the ALJ should. But I don't want to get too far afield on that point because that's not our argument here. It is one of the reasons that she's not entitled to remand at this stage, but it's also more to the point. It is her burden at Step 3, both before the ALJ and before this court, to show that her impairments meant a listing, and she doesn't have the three maneuvers so that regardless of what she raised before the ALJ, she can't show that she meets the listing based on that particular test. And furthermore... Let me ask you one thing. The magistrate judge said that the durational requirement was not satisfied because there was no proof that the claimant's condition had lasted 12 months. Now, that would not be a correct position, would it, in the sense that the COPD is a degenerative condition that only gets worse and so the 12-month durational requirement would easily be satisfied in a case like this and really, from a medical standpoint, the magistrate judge would just be incorrect in that holding, wouldn't you say? No, I wouldn't go that far. So this particular listing doesn't contain a specific durational requirement, but 20 CFR 404.1525C4 specifies that where a particular listing doesn't specify a time frame, then the default time frame that the claimant has to show that the impairment would last at that listing level is 12 months. And even if you do count the two levels, the .92 from December 2014 and the 1.12 from April 2015, those are only four months apart. So we don't have a clear... It's not clear from this record that it would persist. Well, that's what the magistrate judge said, and she cites a case that didn't seem to be quite on point. If you had medical testimony that says this is irreversibly degenerative and you'd gotten below the level, would that not be potentially adequate evidence that it will last for 12 months? If we had that, yes. Because if you cut your leg off, you don't have to wait 12 months if you meet the standard for having only one leg. Certainly that's accurate, but we just don't have that here. We don't have medical testimony. We don't have anything in the record to establish that this condition was likely with any certainty to persist at that certain level. I mean, if we look at all of these, we see it goes up and down, although it appears to be headed down, but it does go up and down. That's exactly what I was getting to, is that there is no clear... We're looking at a fairly small time frame to begin with. Am I also right that the standard, that the first one that was done had four trials and it had them with and without bronchodilators? Am I right that that's required under the standards? Yes, that is required. And that's the only one that has the before and after with bronchodilators, is that right? As near as we can tell. I would need to confirm that as to the April 2015 test. I'm not sure, but again, that wasn't before the ALJ, so that wouldn't count even if it did. At least the record I looked at, which is page ID... I've got so many different numbers here. It's 367 in the lower right, which seems to be the full test from April. It has the three trials, but I don't see the bronchodilators. Okay, go ahead. In any case, the two tests don't establish it, and as to Nedelman's argument that her condition would, because she has this genetic condition, it would obviously deteriorate, we don't know that from the record. The record just doesn't establish that. It's speculative, and because it's her burden, the court should show that she met a listing. She hasn't met that burden based on that argument. I'm sorry, with respect to the genetics, are you saying that that was only brought up in the briefs, that that wasn't before the ALJ? The fact that she had the genetic condition was before the ALJ, but I'm saying that there's nothing in the record that shows that just because she had this genetic condition, her COPD would necessarily deteriorate, much less at the rate she's claiming that it would. We just don't have that in the record. So this presumably would have come from Dr. Patempa if there was anything? It could have, yes. But we don't think it is. No, we don't have that. She also mentions briefly listing 3.03B for asthma in her brief. I don't want to get into it. It's explained in our brief why she doesn't meet the requirements for that listing. She would need to show prolonged symptomatic episodes lasting one or more days each, requiring intensive treatment, and she would need to show that she had at least one of these every two months or at least six times a year. We've outlined in our brief why each of the episodes that she mentioned doesn't meet this standard. Furthermore, the fact that she was using oxygen by itself doesn't necessarily help her meet or equal any of the listings. And furthermore, Dr. Abbasi, the state agency physician, was aware that she was using oxygen. Now, as for her argument about her subjective complaints, she also hasn't established any error there that would entitle her to remand. As to her argument in her brief that the ALJ offered no reasonable or plausible analysis as to why he didn't fully accept her subjective complaints, that's belied by the record. The ALJ offered a number of reasons. I will just go through each of them briefly. He first noted that she had a number of relatively normal lung exams in both August 2014 and October 2014. The regulations specify that objective evidence, while not the only consideration, is a valid factor for the ALJ to take into account. The ALJ also noted that she hadn't had any hospitalizations or emergency room treatments since December of 2014. That's also an accurate statement, and intensity of treatment is also a relevant consideration, particularly for these lung impairments. Now, she has mentioned a number of reasons why she didn't seek medical treatment on these particular occasions, and that may be true, but it still doesn't explain why, on the occasion when she did see her doctor thereafter, more serious findings weren't noted or her doctors didn't prescribe any of the very intensive treatments that one might expect under the listings. The ALJ also noted that she didn't seek medical treatment immediately after an alleged collapse in her yard. Again, one consequence of that is that we just don't have the objective findings afterward that would lead us to understand exactly how severe that episode was. The ALJ also noted that her doctors were unsure if she needed oxygen at all times. Nettleman disputes the accuracy of that statement, but this is, in fact, a direct quote from Dr. Potempa in August of 2014. We are unsure if she needs to have oxygen at all times. This is on page 336 of the record. There are some other ambiguous statements about frequency in the record also. Furthermore, the ALJ noted that Plainiff reported breathing improvements after she started Simbicort and completing nebulizer treatments. Response to treatment is also a valid consideration, and this is based on a number of statements both by her and by her doctors and also her testimony. The ALJ also considered her activities of daily living, which is also a relevant consideration under the regulations. The ALJ also considered that while she alleged a number of activities in her function report, she testified that she was no longer performing at that level. The ALJ acknowledged that testimony and relied only on her testimony as opposed to the statements in the function report. And each of these is a valid consideration under the regulations. It's supported by the record, and for all of these reasons, the court should defer to the ALJ's credibility assessment and unless there are any further questions, we would rest on our brief. Thank you. All right, thank you. Your Honors, if I could take a moment and reframe a little bit back to some of the stuff covered in the brief, which is I think I've listed some questions about the listings, and this case certainly concerns a listing situation, but because of the timings and maybe some of the nuances, it's quite possible that a different doctrine besides a doctrine specifically applying to listings ought to govern. Some examples that I brought out in my brief, I'll elaborate on a little bit here. One would be the Hirsch standard, the notion that if an entire line of evidence was not questioned or really contested or discussed by the medical reports, that that leads to no deference due to that ALJ opinion. Alternately, sort of the Feliski doctrine, which is that where the medical evidence and the activities of daily living are pulled out of context and aren't presented in good faith, that is a reason to conclude that substantial evidence has not been met. Some examples of, for example, this last substantial evidence problem include the test where the ALJ opinion says that, well, she can sit without oxygen. If, in fact, you look up that reference, what it says is that she can sit without, and this is her testifying, without those records having been yet on the record, what she says is that she can sit without oxygen for a short period if she's not active. In the world of Social Security determinations, that's a very significantly, substantially different statement than what is alleged by the ALJ opinion, out of context, substantially out of context, that she can sit while sitting. Likewise, in terms of Dr. Potempa's or Ms. Potempa's indications that maybe she does not need oxygen at all times, in the course of the record, that statement is backtracked when she keeps having problems, and every time these doctors who are examining her examine her, she's got lung problems. The woman's got an oxygen tank she's got in tow. I don't think it's an exaggeration to say that every visit, a stethoscope would be placed on her chest, and there would be objective listening to her condition, and yet none of these folks have done anything except stand by the notion that she needs to be on oxygen. She should not be off of it. Counsel, is there law or cases, regulations, that imply or state that if you use an oxygen tank continuously, you're automatically disabled? I think this is covered in the briefing. I think there's some reference in the new regulation suggesting that use of, but it's not the regulation in place at this time, but maybe in the new one. I think it's brought up in the commissioner's brief. The notion is that the use of an oxygen tank does not thereby automatically mean disability, and I don't think we're contesting that. The notion is that this lady is stuck kind of needing it, as much as we've seen her. She tried to live without it, tried to go back to work. She has not been able to do it. I mean, my reason I asked that question was not just the statement that we need other medical evidence, but I did not find any cases where a court or the appeals council says she's on oxygen at all times, therefore she can't work, because just casually you see people doing lots of stuff with oxygen tanks. That might be the case. I don't know the answer to that. I'm trying to say it doesn't move us away from the rest of the normal evidentiary rules, because that was my question. Okay, but my point is that the situation with the way the listings were handled by the administrative law judge, the way the things were taken out of context by the administrative law judge, the problem with the timing and the reliance on the medical consultant, who I think as the Feliski case captures it, is a paid consultant who is not... Doug Feliski, F-E-L-I-S-K-I. I think that's right. It's in the briefing, Your Honor. And I think in context of those things taken out of context and the significance of the timing issue with the woman having, by even the simplest measures, quite possibly, if it doesn't meet the listing, quite possibly maybe equals it, which is met or equal. That's the language used. It becomes an important case to, if not directly award benefits, to issue a re-examination of the situation. Do you have anything else to say about this magistrate judge's view regarding the durational requirement being not satisfied? Yeah, I think... And I'll actually point to a citation in the commissioner's brief, 204-1525-C-4, which of course is in the 20 CFR bregs, which basically says, first off, most of the impairments are permanent or expected to result in death. What's that in reference to? The durational requirement connected to the listing. You're saying that's a quote from 1524-C-2? C-4, I think. That's right. And then it goes on to explain that either the listings list a durational requirement, and if they don't, then the test is the test most of us are familiar with, which is that, well, has it lasted 12 months, or is it anticipated to last 12 months? And I think here with the lady, Ms. Nettleman, having the AATD and the symptoms that she's tried to struggle with and deal with but hasn't been able to, the doctor's corroborating that, and the evidence that it seems to be going downhill. She's got the class 3 shortness of breath, that the ALJ points out, only to discredit it as not being a heart condition. I think in total, I mean, she's assigned by the ALJ something called light work, which at the time of the... If I can finish my thought, Your Honor. Go ahead. At the time of the writing of the opinion, light work meant 5 hours and 20 minutes a day. It should have to be standing and working, and I don't think that is plausible under the facts, and we request that the interest of justice be served rather than the narrow technical reading of a listing and ask for remand. Thank you. All right, thank you. The case is submitted.